## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

SWISS RE INTERNATIONAL SE,

        Plaintiff,

V.

NORA & PARTNERS, LLP, an Illinois
Limited Liability Partnership; VERONICA
NULMAN; MYRA BROWN,

        Defendants.

Case No. 25-cv-7055

**Jury Trial Demanded**

### COMPLAINT FOR LEGAL MALPRACTICE

For its Complaint against Nora & Partners, LLP, Veronica Nulman, and Myra Brown (collectively the "Lawyer Defendants"), Plaintiff Swiss Re International SE ("SwissRe"), through its counsel undersigned, alleges upon knowledge with respect to its own acts, and, upon information and belief as to other matters, as follows:

### NATURE OF THE CASE

1.      On August 23, 2018, a New Mexico jury returned a ***$73,210,000.00*** plaintiff's verdict—consisting of $33,210,000.00 in compensatory damages and $40,000,000.00 in punitive damages against Pecos Valley of New Mexico, LLC ("Pecos Valley"). The verdict—which arose from the medical malpractice case styled *Sperling et al. v. Pecos Valley of New Mexico, LLC et al.*, Case No. D-101-CV-2016-00742 (the "Medical Malpractice Action")—is estimated to be the highest medical malpractice verdict ever issued in New Mexico and was the 33rd largest verdict returned in 2018 throughout the United States.

2.      After the trial court denied Pecos Valley's post-trial motions and entered its final judgment on September 5, 2018, Pecos Valley filed its appeal.

1

3. Pecos Valley did not enter a true supersedeas bond, but instead struck the following compromise with the plaintiffs in the Medical Malpractice Action (hereinafter the "Botello plaintiffs"): Pecos Valley and CHSPSC, LLC (f/k/a Community Health Systems Professional Services Corporation) ("CHS")[1] agreed to post a $50,000,000.00 bond and to guarantee the remaining portion of the judgment. In exchange, the Botello plaintiffs agreed not to execute on the judgment against Pecos Valley pending all appeals, while retaining the right to pursue the medical malpractice judgment against Pecos Valley's tower of excess insurers, which at the time provided coverage at the following amounts:

| Insurer | Level of Insured Risk |
|---------|----------------------|
| Community Insurance Group SPC, Ltd. ("CIG") | **$4,750,000.00**<br><br>(In excess of $250,000.00 self-insured retention.) |
| Allied World Assurance Company, Ltd. ("AWAC") | **$50,000.00**<br><br>(Remaining limit on policy.) |
| Steadfast Insurance Company ("Steadfast") | **$15,000,000.00**<br><br>(Covering the compensatory damages potion of the judgment from $5,050,000.00 to $20,050,000.00.) |
| Admiral Insurance Company ("Admiral") | **$10,000,000.00**<br><br>(Covering the compensatory damages potion of the judgment from $20,050,000.00 to $30,050,000.00.) |
| Endurance Specialty Insurance Ltd. ("Endurance") | **$15,000,000.00**<br><br>(Covering the compensatory damages portion of the judgment from $30,050,000.00 up to compensatory damage amount of $33,210,000.00; and the first $11,840,000.00 of the punitive damage portion of the judgment.) |

---

[1] Pecos Valley is both an affiliate hospital of CHS and a named insured under CHS's professional liability insurance program.

| Illinois Union Insurance Company ("Illinois Union") | **$10,000,000.00**<br><br>(Covering the punitive damage portion of the judgment from $11,840,000.00 to $21,840,00.00.) |
|---|---|
| Swiss Re International SE ("SwissRe") | **$25,000,000.00**<br><br>(Covering the punitive damage portion of the judgment from $21,840,000.00 to the $40,000,000.00 awarded (or $18,160,000.00.) |

4.     True to the agreement, that's precisely what the Botello plaintiffs did.   On July 1, 2019, the Botello plaintiffs filed a garnishment action against the tower of insurers identified above, which was styled *Botello et al. v. Community Insurance Group SPC, Ltd. et al.* in First Judicial District Court for Santa Fe County, Cause No. D-101-CV-2019-01747 (the "Garnishment Action").

5.     The Illinois law firm, Nora & Partners, LLP ("Nora & Partners") and its lawyers Veronica Nulman ("Ms. Nulman") and Myra Brown ("Ms. Brown"), monitored the Medical Malpractice Action for SwissRe and participated in phone calls with Pecos Valley's appellate counsel regarding the appeal.

6.     Ms. Nulman and Ms. Brown provided legal counsel and advice to SwissRe regarding the appeal of the Medical Malpractice Action, including but not limited to whether SwissRe should participate in any mediations, and whether SwissRe should join a separate coverage action filed by other insurers in the tower.

7.     When the Garnishment Action was filed, SwissRe retained Nora & Partners and Ms. Brown and Ms. Nulman to defend SwissRe's interests and to provide competent legal counsel and advice with regard to, *inter alia*, the complex insurance coverage, post-judgment enforcement, and choice of law issues implicated by the allegations set forth in the Garnishment Action.

8.     Nora & Partners then recommended that SwissRe retain the Albuquerque law firm, Park & Associates, LLC ("Park & Associates") and its lawyer, Geoffrey D. White ("Mr. White"), to serve as local counsel for SwissRe in the Garnishment Action.

9.     Based on Nora & Partners' recommendation, SwissRe retained Park & Associates and Mr. White to represent SwissRe as local counsel in the Garnishment Action.

10.    Ms. Brown and Ms. Nulman referred to Mr. White as SwissRe's "local counsel."

11.    As Nora & Partners would later concede to SwissRe, however, "Geoff [White] was over his head and we learned the hard way."  *See* SWISSRE005957.  But the lesson learned—at SwissRe's sole expense, no less—proved catastrophic:  The trial court in the Garnishment Action granted the Botello plaintiffs' motion for summary judgment ***against SwissRe, only***, and on June 23, 2020, entered final judgment against SwissRe in the principal amount of $18,160,000.00, plus (1) "interest through June 15, 2020 in the amount of $4,846,495.00," and (2) uncapped post-judgment interest accruing after June 15, 2020 at a rate of 15% per year (or $7,463.01 per day).

12.    That the trial court in the Garnishment Action did not enter summary judgment against any of the other defendant insurers named in the Garnishment Action, each of whom insured risk below SwissRe's layer of coverage, was not by happenstance.  Indeed, the Lawyer Defendants failed to advise and defend their client in at least the following respects:

a.     *First*, Nora & Partners neglected to competently advise SwissRe as to the need to obtain a true supersedeas bond that, under N.M. Stat. Ann. § 39-3-22(A), was required to stay the Botello plaintiffs' efforts to execute on the judgment entered in the Medical Malpractice Action on September 19, 2018 in the amount of $74,061,647.49 and, following on that, the Lawyer Defendants failed to research, coordinate or propose other protective measures to ensure a stay was entered while Pecos Valley and CHS's appeal of the medical malpractice judgment remained

4

pending. By failing to advise SwissRe on issues concerning the lack of a true supersedeas bond, the Lawyer Defendants, as more fully alleged below, fell below the standard of care and negligently exposed SwissRe's excess policy of insurance at or near the top of the stack, which the Botello plaintiffs ultimately and successfully pursued in the Garnishment Action. But for these failures, the Botello plaintiffs would not have been successful in the Garnishment Action.

b. *Second*, Nora & Partners fell below the standard of care by failing to advise SwissRe to intervene in the declaratory judgment coverage action filed by Steadfast in Delaware state court, No. N18C-11-127-EMD on November 14, 2018 (the "Delaware Coverage Action"), which asserted that there was no coverage under the Steadfast policy because, *inter alia*, CHS had violated both its duty to settle and the Steadfast policy's cooperation provision. Admiral, Endurance, and Illinois Union timely intervened in the Delaware Coverage Action, asserting that coverage under their policies was too vitiated as a result of CHS's alleged violation of its duty to settle as well as its alleged failure to abide by certain notice provisions, among other things. Nora & Partners failed to sufficiently research the benefits of intervening in the Delaware Coverage Action and failed to adequately explore and communicate SwissRe's coverage defenses for purposes of assessing whether SwissRe should intervene in the Delaware Coverage Action, including but not limited to asserting the most fundamental of coverage arguments that SwissRe's excess layer of indemnity coverage was not subject to attachment unless the insurers below it in the stack had exhausted their respective limits. Notably, the court in the Garnishment Action denied the Botello plaintiffs' motion for summary judgment against Steadfast, Admiral, Endurance, and Illinois Union—all of whom were parties to the then-ongoing Delaware Coverage Action. As more fully set forth below, these failures were a cause in-fact and proximate cause of the judgment entered against SwissRe in the Garnishment Action and SwissRe's ensuing damages.

c. *Third*, the Lawyer Defendants and Park & Associates failed to invoke the choice of law provision in SwissRe's policy endorsement that required application of Tennessee law in the Garnishment Action. A large part of the summary judgment briefing and hearing in the Garnishment Action centered on the application of a New Mexico case, *Rummel v. Lexington Ins. Co.*, 123 N.M. 752 (1997). The trial court ultimately held that, pursuant to *Rummel*, summary judgment was appropriate against SwissRe, only. But *Rummel* should have never factored into the trial court's analysis because the SwissRe policy was governed by Tennessee law—not New Mexico law. Notwithstanding similar choice of law arguments made by the other insurers in the Garnishment Action, the Lawyer Defendants failed to recognize and then argue that Tennessee law controlled the interpretation of SwissRe's policy, which in turn was a cause in fact and proximate cause of the trial court's summary judgment decision and the ensuing final judgment entered against SwissRe. As a result of this oversight, SwissRe was stuck with application of harmful New Mexico case law that the court in the Garnishment Action relied upon to enter judgment against SwissRe.

d. *Fourth*, the Lawyer Defendants prepared, reviewed and/or approved for filing inappropriate responses to the Botello plaintiffs' written discovery requests in the Garnishment Action that ultimately led the court in the Garnishment Action to impose sanctions against SwissRe. Not only did the sanctions order harm and tactically disadvantage SwissRe, the Lawyer Defendants' discovery responses—which, for example, claimed that SwissRe did not have sufficient information to admit or deny whether the Botello plaintiffs had attached a correct copy of SwissRe's policy—ultimately resulted in an order deeming the Botello plaintiffs' requests for admissions to SwissRe admitted. The Botello plaintiffs successfully bootstrapped that ruling, as the trial court granted them summary judgment and found there were no material issues of fact as

6

to SwissRe's liability.  These failures were a cause in fact and proximate cause of the trial court's summary judgment decision and the ensuing final judgment entered against SwissRe, only, in the Garnishment Action.

e.  *Fifth*, the Lawyer Defendants failed to analyze and make recommendations concerning the Botello plaintiffs' claim that SwissRe was an unadmitted insurer in New Mexico and thus was statutorily required to post a bond as a condition to its appearance and defense of the Garnishment Action.  The Lawyer Defendants commented to SwissRe that filing a bond "seems like such a lot to do about nothing for something that has absolutely no basis" and opined that there should be "a simpler solution."  But the Lawyer Defendants never researched the issue in earnest. Had they done so, they could have articulated before the court sound legal arguments demonstrating that SwissRe was not required to post a bond.  The Lawyer Defendants' failures in these respects were a cause in fact and proximate cause of the trial court's summary judgment decision and the ensuing final judgment entered against SwissRe, only.  Indeed, while the trial court denied the Botello plaintiffs' motion on the "non-admitted" issue, the Lawyer Defendants nonetheless believed the issue contributed to the judge's summary judgment ruling against SwissRe in the Garnishment Action.  As Nora & Partners reported to SwissRe on July 8, 2020: "[T]he court was troubled by SwissRe's failure to become an authorized insurer and/or that it did not seek to post a bond once it was clear it was unauthorized."  Nora & Partners' same report later unequivocally provides that "[t]he only logical explanation for the judge's decisions appears to be that SwissRe was singled out from the other carriers due to its nonadmitted status," concluding "the judge's displeasure towards SwissRe was due to SwissRe's filing of pleadings in the face of its nonadmitted status."

f.  *Sixth*, after the court in the Garnishment Action entered summary judgment against

SwissRe, but during the same May 28, 2020 hearing, Ms. Brown e-mailed Mr. White and instructed him to request that the judgment as against SwissRe be certified as final so SwissRe could take an immediate appeal. Mr. White did so, and the court agreed that a final judgment was appropriate. The Lawyer Defendants' decision to ask for a final judgment without first consulting their client fell below the standard of care as it impeded SwissRe's ability to seek reconsideration of the summary judgment ruling. In fact, when denying SwissRe's motion for reconsideration that followed, the trial judge noted that SwissRe had been the one to ask for final judgment. In addition, without a final judgment, post-judgment interest at the rate of 15% would not have started to accrue as soon as it did and SwissRe's motions for reconsideration would have stood a better chance of being granted. At the very least, SwissRe would have been in a much better position to negotiate a settlement with the Botello plaintiffs had final judgment not been entered.

13. As a direct and proximate result of the foregoing breaches of the standard of care, SwissRe was put in an exceedingly difficult position: Either settle with the Botello plaintiffs without any real leverage, or pursue an appeal of the $23,000,000.00+ judgment entered against it, which as alleged above was incurring interest at 15% per annum, or $7,463.01 per day.

14. SwissRe ultimately elected to settle with the Botello plaintiffs, which was memorialized in a confidential settlement agreement.

15. As a result of its counsels' compounding errors and breaches of the standard of care, SwissRe was forced into making a large settlement payment (a) even though the underlying Pecos Valley appeal was pending in the Medical Malpractice Action, and (b) even though SwissRe policy's coverage had not yet been triggered (since the other insurers in the tower below SwissRe had not exhausted their coverage for the Medical Malpractice Action). But for those errors, SwissRe most likely would have been in the same position as the other insurers in the stack——

*none of whom had a final judgment entered against them.*

16.     SwissRe seeks damages caused by Defendants' legal malpractice, including but not limited to compensatory damages in an amount to be determined at trial, its attorneys' fees incurred in attempting to right the Lawyer Defendants' wrongs in the Garnishment Action, and recovery of its taxable costs and expenses of suit.

## PARTIES

17.     Plaintiff Swiss Re International SE is a Luxembourg corporation with its principal place of business in Luxembourg. Plaintiff is therefore a citizen of Luxembourg, a foreign state, for purposes of diversity under 28 U.S.C. § 1332(a).

18.     Defendant Nora & Partners, LLP is or was at all relevant times an Illinois limited liability company with its principal place of business at 10 South LaSalle Street, Suite 2500, Chicago, IL 60603. Upon information and belief, the Managing Partner for Nora & Partners, LLP, Robert Nora, was at all relevant times an attorney licensed to practice law in the State of Illinois and is a citizen of Illinois. Upon information and belief, Defendant Nora & Partners, LLP is a citizen of Illinois.

19.     Defendant Veronica Nulman is, upon information and belief, a resident and citizen of Illinois and was for all times relevant hereto a lawyer with Defendant Nora & Partners, LLP. Upon information and belief, Ms. Nulman currently works at the law firm McCullough P.C., which is located at 205 North Michigan Ave. Suite 2550, Chicago, Illinois, 60601. Upon information and belief, Ms. Nulman has at all relevant times been licensed to practice law in the State of Illinois.

20.     Defendant Myra Brown is, upon information and belief, a resident and citizen of Illinois and was for all times relevant hereto a lawyer with Nora & Partners, LLP. Upon information and belief, Ms. Brown currently works at the law firm McCullough P.C., which is

located at 205 North Michigan Ave. Suite 2550, Chicago, Illinois, 60601. Upon information and belief, Ms. Brown has at all relevant times been licensed to practice law in the State of Illinois.

21.     Defendant Nora & Partners, LLP is liable for the alleged acts and omissions of Ms. Nulman and Ms. Brown under the doctrine of *respondeat superior*, as their acts were at all relevant times undertaken within the course and scope of their employment with Nora & Partners, LLP.

## JURISDICTION AND VENUE

22.     The Court has jurisdiction under 28 U.S.C. § 1332(a).

23.     The amount in controversy exceeds $75,000 exclusive of interests and costs.

24.     Venue is proper in this District under 28 U.S.C. § 1391. Upon information and belief, Defendants reside in and are citizens of Illinois and currently conduct business within this District.  Moreover, the alleged acts and omissions giving rise to this suit were undertaken by Defendants while they resided and worked within this District.

## FACTUAL ALLEGATIONS

### A.    Nora & Partners

25.     As of 2024, Nora & Partners, LLP's website provided: "NORA & PARTNERS, LLP is a Chicago based Martindale-Hubbel AV rated law firm founded in 1998 by a group of experienced trial attorneys who provide excellent litigation services, while also promoting close client communication and a team approach to case resolution.  We have always met and exceeded every goal in the defense of clients, whether it be at trial or through settlement negotiations.  In a climate that trends toward litigation and where adverse verdicts seem to be skyrocketing, we approach our defense by taking the offense.  Nora & Partners, LLP advocates early critical and analytical thinking to frame cases and problem solve for our clients.  We promote prompt expert retention and extensive witness preparation, as well as constant liability analysis and evaluation of

10

damages. This results in the strongest defense possible for our clients." https://www.noralaw.com/.

26.     Nora & Partners represented SwissRe on coverage and medical malpractice matters and was, for all intents and purposes, employed by SwissRe as SwissRe's outside national counsel for all times relevant hereto.

27.     Nora & Partners was retained by SwissRe to monitor and advise and protect SwissRe's interests with regard to the Medical Malpractice Action in early 2018.

28.     Nora & Partners took an active role in the Garnishment Action and provided legal advice to SwissRe in connection with the Garnishment Action. Together, Ms. Brown and Ms. Nulman spent more than 350 hours in connection with the Medical Malpractice Action and Garnishment Action.

29.     During all relevant times, SwissRe reposed trust and confidence in Nora & Partner's capabilities and reasonably relied upon Nora & Partners' legal advice.

**B.      The Medical Malpractice Action & Delaware Coverage Action**

30.     On March 21, 2016, Amy Manning, as Conservator of Jonathan Botello, a minor, and Lorenza and Alvaro Botello, individually and on behalf of their son, filed a medical malpractice action against Pecos Valley, CHS, and others styled *Sperling et al. v. Pecos Valley of New Mexico, LLC et al.*, Case No. D-101-CV-2016-00742 (defined above as "Medical Malpractice Action"). The Medical Malpractice Action concerned allegations concerning the birth of Jonathan Botello and, specifically, the complications that ensued during Ms. Botello's delivery.

31.     Prior to trial, the parties to the Medical Malpractice Action in early 2018 attended private mediation. At that mediation, the Botello plaintiffs made a "drop dead" demand of $5,000,000.00, which Pecos Valley and CHS countered at $1,250,000.00.

32.     Trial commenced on August 15, 2018. During jury deliberations, the jury asked

something along the lines of "Who is going to get the punitive damages?"

33.     On August 23, 2018, the jury returned a $73,210,000.00 plaintiff's verdict consisting of $33,210,000.00 in compensatory damages and $40,000,000.00 in punitive damages against Pecos Valley.

34.     The court entered its final judgment on the verdict on September 5, 2018 (the "Malpractice Judgment").

35.     On November 14, 2018, Steadfast filed a declaratory judgment action against Community Health Systems, Pecos Valley, and related entities (collectively, the "Insureds") in Delaware state court, No. N18C-11-127 EMD (the "Delaware Coverage Action").

36.     In its complaint, Steadfast alleged, *inter alia*, that it had no duty to indemnify the Insureds for any portion of the Malpractice Judgment because the Insureds breached their duty to settle the Medical Malpractice Action for a reasonable amount and thereby materially violated contractual pre-conditions to coverage under the Steadfast policy.

37.     Admiral, Endurance, and Illinois Union intervened in the Delaware Coverage Action.  They asserted, *inter alia*, that they had no obligation to cover any portion of the Malpractice Judgment for the same or similar reasons advanced by Steadfast.

38.     The Delaware Coverage Action required complex and document-intensive discovery regarding coverage issues, and included the exchange of tens of thousands of pages of documents, the appointment of a special master, counterclaims, and related parallel civil proceedings.

39.     Nora & Partners received a copy of the complaint in the Delaware Coverage Action in or around December 2018.

40.     Nora & Partners reviewed the complaint and advised SwissRe of its opinion that

12

CHS's conduct did not rise to the level of bad faith.

41.     Although Nora & Partners stated that a more thorough analysis was needed to reach a conclusion on the likely outcome of the Delaware Coverage Action, Nora & Partners did not perform such analysis until after judgment was entered against SwissRe in the Garnishment Action.

42.     Nora & Partners did not advise SwissRe to intervene in the Delaware Coverage Action, and, relying on Nora & Partners' advice and counsel, SwissRe did not intervene.

43.     On December 14, 2018, the trial court in the Medical Malpractice Action denied all of Pecos Valley's post-trial motions and granted the Botello plaintiffs' motion for prejudgment interest and costs.

44.     The Botello plaintiffs filed a motion to require a supersedeas bond on December 18, 2018.

45.     On January 14, 2019, Pecos Valley filed a notice of appeal of the Malpractice Judgment.

46.     On January 19, 2019, Pecos Valley filed a response to the Botello plaintiffs' motion to require a supersedeas bond, asserting that the verdict was excessive and urging the court to consider a bond for less than twice the amount of verdict.  Pecos Valley's response included a footnote which states, "Pecos Valley has discussed with counsel for plaintiffs a stipulated bond amount but has received no response."

47.     In March 2019, CHS obtained a $50,000,000.00 dollar "supersedeas bond" on behalf of Pecos Valley, which was made pursuant to a written agreement that barred the Botello plaintiffs from executing against Pecos Valley on the Malpractice Judgment during the pendency of the appeal.  The same agreement, however, expressly authorized the Botello plaintiffs to pursue

collection of the Malpractice Judgment against Pecos Valley's tower of insurance.

48.     Ultimately, no true supersedeas bond was posted, let alone one that complied with N.M.S.A. § 39-3-22(A).

49.     At this time, Nora & Partners was representing SwissRe in connection with discussions with Pecos Valley's counsel regarding the appeal of the Medical Malpractice Action and a supersedeas bond.

50.     Nora & Partners did not take any steps to ensure that an adequate supersedeas bond was in place. Nor did Nora & Partners advise SwissRe as to its options and the attendant risks of letting the appeal proceed without an adequate supersedeas bond.

**C.     Pecos Valley's Tower of Insurance**

51.     Pecos Valley, though its affiliate, Community Health Systems, had a tower of primary and excess liability insurance.  A primary insurance policy issued by CIG covered liability from $250,000 to $5 million, with the initial $250,000 covered by a Self-Insured Retention that was paid by CHS.  There was also a "buffer" layer that provided coverage of $5 million per claim and $10 million in the aggregate above the primary layer of $5 million.

52.     The first excess policy, issued by Allied World Assurance Corporation, Ltd. ("AWAC"), provided limits of $20 million per claim and $20 million in the aggregate, and attached above the underlying primary limits of $10 million. Four follow-form policies issued by Steadfast ($15 million), Admiral ($10 million), Endurance ($15 million), and Illinois Union ($10) incorporated terms from the AWAC policy and provided additional layers of coverage above the AWAC policy.

53.     The SwissRe Policy, No. WD1200295 ("SwissRe Policy"), sat atop this tower, and provided $25 million in coverage for liability in excess of $80 million.

54.     The SwissRe Policy follows the form of the underlying policy issued by AWAC. Accordingly, that policy only incorporates terms from the AWAC policy to the extent those terms and provisions are not otherwise inconsistent with the SwissRe Policy's terms and provisions.

55.     The SwissRe Policy provides indemnity-only coverage, meaning that SwissRe is only obligated to reimburse the insured for amounts that the insured has actually paid above $80 million dollars in connection with covered liability, after exhaustion of all underlying insurance. Specifically, the SwissRe Policy states that SwissRe will not be obligated to indemnify the insured until underlying insurers "have paid or have been held liable to pay the full amount of their respective Policy liability."

56.     The SwissRe Policy reiterates that the maintenance of underlying insurance and payment on the underlying policies are important pre-conditions of coverage by SwissRe.

57.     Endorsement No. 3 of the SwissRe Policy contains the following choice-of-law provision: "The parties' rights and obligations under this policy shall be governed, construed, and enforced in accordance with the laws of the State set out in your mailing address as shown in the Declarations issued at the Inception Date."

58.     CHS' mailing address on the Declarations in the SwissRe Policy was identified as 4000 Meridian Boulevard, Franklin, Tennessee 37067.

59.     Accordingly, Tennessee law governed the interpretation and enforcement of the SwissRe Policy.

**D.      The Garnishment Action**

60.     On July 1, 2019, the Botello plaintiffs filed a complaint for specific performance, breach of contract, and garnishment against SwissRe and the underlying insurers in Pecos Valley's tower of insurance styled *Botello et al. v. Community Insurance Group SPC, Ltd. et al.* in the First

Judicial District Court for Santa Fe County, Cause No. D-101-CV-2019-01747 (the "Garnishment Action").

61.     In or about August 1, 2019, SwissRe, at Nora & Partners' direction and recommendation, retained the Albuquerque law firm, Park & Associates and its medical malpractice defense lawyer, Mr. White, to serve as local counsel in the Garnishment Action.

62.     In his communications with Nora & Partners, Mr. White considered Nora & Partners to have the ultimate decision making authority in connection with the Garnishment Action. *See, e.g.*, PARK012457.

63.     Nora & Partners sent Park & Associates invoices to SwissRe for approval. SwissRe then paid the Park & Associates invoices into Nora & Partners' trust account and Nora & Partners paid Park & Associates from its trust account.

64.     According to Mr. White's online biography: "Mr. White graduated from the University of New Mexico School of Law in 2009.  He has tried cases in federal court, state district court, state magistrate court, and before the New Mexico Workers Compensation Administration.  Mr. White has defended doctors, teachers, truck drivers, local businesses, state agencies, national companies, and international corporations.  His areas of practice experience include medical malpractice, complex civil litigation, products liability, premises liability, trucking and transportation, retail litigation, and general liability."
https://www.parklawnm.com/team/geoffrey-d-white/

65.     At the time he was hired to serve as local counsel in the Garnishment Action, Mr. White did not have experience in complex insurance disputes and post-judgment enforcement proceedings.

66.     During discovery in the Garnishment Action, on October 31, 2019, the Botello plaintiffs served their First Requests for Admission on SwissRe, which consisted of 19 separate requests (the "RFAs"). Among other things, the RFAs asked SwissRe to confirm the authenticity of SwissRe's Policy and of its policy provisions.

67.     On November 4, 2019, the Botello plaintiffs filed a motion in the Garnishment Action to default SwissRe, arguing that it was an unauthorized insurer in New Mexico and had not posted the requisite bond.

68.     Park & Associates served improper responses and objections to the RFAs on December 2, 2019, which had been reviewed and approved by the Lawyer Defendants prior to service.

69.     Upon information and belief, the Lawyer Defendants never shared drafts of their finalized discovery responses with SwissRe or otherwise advised SwissRe on the proper course or best strategy for responding to those requests.

70.     Indeed, according to Nora & Partners' July 8, 2020 report to SwissRe: "On November 25, Mr. White provided draft answers to plaintiff's discovery. . . .We responded by approving draft responses the same day. The general tenor of these draft responses was that it was premature to respond given the ongoing appeal and Delaware declaratory action." *See* SWISSRE013087.

71.     The Lawyer Defendants knew that the RFA responses were deficient.

72.     When she approved the draft responses, Ms. Nulman wrote: "I expect that the many objections which [sic] make plaintiff's counsel froth at the mouth! No need to discuss further. Myra and I are out of the office Weds through the end of the week, so have a Happy Thanksgiving and thanks for your work on this."

73.     Later, Mr. White advised Nora & Partners that they needed to supplement the discovery responses: "we need to get out ahead of this issue. Let's not have the judge turn against us at the outset of litigation."

74.     On January 15, 2020, the Botello plaintiffs in the Garnishment Action filed a motion for summary judgment.  In that motion, the Botello plaintiffs argued, *inter alia*, that summary judgment should be granted on their breach of contract claim because the SwissRe Policy incorporated terms from the underlying AWAC policy that required SwissRe to immediately pay the Botello plaintiffs a portion of the Malpractice Judgment on behalf of Pecos Valley.  The Botello plaintiffs cited *Rummel v. Lexington Ins. Co*., 123 N.M. 752, for the proposition that the SwissRe Policy should be treated as a liability policy.  The Botello plaintiffs furthermore argued that summary judgment should be entered because SwissRe should be deemed to have admitted the RFAs.

75.     SwissRe did not argue in its response to the Botello plaintiffs' motion for summary judgment that its policy was governed by Tennessee law, rendering *Rummel* inapposite.

76.     On January 17, 2020, the Botello plaintiffs in the Garnishment Action filed a motion to deem the RFAs admitted.

77.     The Lawyer Defendants reviewed, prepared, and/or approved supplemental responses to the RFAs, which were served upon the Botello plaintiffs on January 30, 2020. The supplemental responses retain the improper objections from the original responses.

78.     In April 2020, Ms. Brown stated to Ms. Nulman, "Still not sure how good Jeff is, but I guess the sufficiency of the bond and the agreement will be argued another day." Neither Ms. Brown nor Ms. Nulman informed SwissRe of their concerns regarding Mr. White at that time.

79.     On May 28, 2020, the court granted the Botello plaintiffs' motion to deem the RFAs admitted and awarded the Botello plaintiffs sanctions against SwissRe.

80.     During the same hearing, the court granted the Botello plaintiffs' motion for summary judgment—***but only as against SwissRe***.  The court during the hearing explained: "I think that *Rummel v. Lexington Insurance Company* is applicable, and I do think that the plaintiff has made a prima facie case.  I don't think, however, that the defendant has presented the Court with any facts which would preclude summary judgment as a matter of law." *See* May 28, 2020 Hearing Transcript at 84.

81.     During the same hearing, Mr. White, on Nora & Partners' instruction, requested the court to certify its judgment against SwissRe as final under Rule 54(B).

82.     None of the Lawyer Defendants consulted with SwissRe regarding the risks and consequences of certifying the judgment as final prior to requesting that the court certify the judgment as final.

83.     After the trial court awarded summary judgment, Ms. Brown confided to Ms. Nulman, "Now he [Mr. White] is showing that this case was entirely above him and we should have taken it away earlier." *See* NP008079.

84.     On June 10, 2020, the court in the Garnishment Action denied the Botello plaintiffs' motion for summary judgment as against Steadfast, Admiral, Endurance, and Illinois Union.

85.     Steadfast, Admiral, Endurance, and Illinois Union were all parties to the Delaware Coverage Action, which remained ongoing and unresolved as of the date of the court's decision.

86.     On June 23, 2020, the court entered the Botello plaintiffs' proposed Rule 54(B) Final Judgment Against Swiss Re International SE (the "Garnishment Judgment").  The Garnishment Judgment required SwissRe to pay $18,160,000.00 million dollars, plus (1) "interest

through June 15, 2020 in the amount of $4,846,495.00," and (2) uncapped post-judgment interest accruing after June 15, 2020 at a rate of 15% per year ($7,463.01 per day).

87.     The Lawyer Defendants continued to represent SwissRe after the entry of the Garnishment Judgment and provided legal advice in connection with post-trial motions and an appeal of the Garnishment Judgment.

88.     The court in the Garnishment Action denied SwissRe's post-trial motions.

89.     After SwissRe filed its appeal of the Garnishment Judgment and a subsequent mediation, SwissRe settled with the Botello plaintiffs and Pecos Valley/CHS for an amount memorialized in a confidential settlement agreement. The Lawyer Defendants provided legal advice to SwissRe in connection with the settlement.

90.     As a result of that settlement, Pecos Valley dismissed the appeal of the Medical Malpractice Action.

91.     Upon information and belief, the insurers in the stack below SwissRe eventually settled the Garnishment Action and the Delaware Coverage Action for an amount significantly less than the coverage implicated.

92.     SwissRe and the Lawyer Defendants entered into agreements to toll any applicable statutes of limitation between May 12, 2022 and February 9, 2024.

93.     On March 1, 2024, SwissRe filed suit against the Lawyer Defendants, Geoff White and Park and Associates in the Federal District Court of New Mexico (the "New Mexico Lawsuit"). The Lawyer Defendants moved to dismiss the claims against them in the New Mexico Lawsuit for lack of personal jurisdiction.

94.     On March 31, 2025, the court in the New Mexico Lawsuit granted the Lawyer Defendants' motion to dismiss, stating that SwissRe's claims against the Lawyer Defendants

20

would not be time-barred pursuant to 735 Ill. Comp. Stat. § 5/13-217, which provides: " [W]here the time for commencing an action is limited, if . . . the action is dismissed by a United States District Court for lack of jurisdiction, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, . . . may commence a new action within one year or within the remaining period of limitation, whichever is greater, after . . . the action is dismissed by a United States District Court for lack of jurisdiction."

95. The New Mexico Lawsuit remains pending against Geoff White and Park & Associates, LLC.

**E.    The Lawyer Defendants' Multiple Breaches of the Standard of Care**

96. SwissRe sat at top of the stack of the relevant insurers.

97. Yet the court in the Garnishment Action summarily adjudicated its liability on the Malpractice Judgment, while simultaneously denying the Botello plaintiffs' bid for summary judgment against the other insurers below SwissRe.

98. This reality begs the question of what caused the court in the Garnishment Action to summarily adjudicate SwissRe's liability to the tune of approximately $23,000,000, while sparing the rest of the insurers below it?  The simplest, most logical answer:  SwissRe's counsels' several, compounding failures.

a.    <u>The Supersedeas Bond Failures</u>

99. From the very beginning, the Lawyer Defendants knew that a true supersedeas bond was not in place.  They knew without a true supersedeas bond in place that their client, SwissRe, was vulnerable to collection efforts.  Yet, in spite of this knowledge, the Lawyer Defendants failed to counsel SwissRe concerning its vulnerability.  Nor did they take any affirmative steps to put a bond in place or otherwise prevent collection efforts by the Botello plaintiffs.

100.    Specifically, on September 13, 2018, Ms. Nulman attended a call with the attorneys for CHS and the other insurers, at which the issue of a supersedeas bond was raised.  The lawyers on the call agreed that the bond would likely need to be double the full amount of the judgment, including the punitive damages.  And, according to Ms. Nulman's notes, appellate counsel for Pecos Valley/CHS asked on the call if there was "***enough money among the insurers for the bond***." (Emphasis added.)  *See* SWISSRE000873.

101.    Nora & Partner's "Report 1" to SwissRe dated December 21, 2018, which was signed by Ms. Nulman, is further instructive.  In recounting the substance of her September 13, 2018 call, Ms. Nulman reported: "We understand that appellate counsel has been retained.  Indeed, we participated in a conference call with presumptive appellate counsel, Edward Ricco of the Rodey, Dickason, Sloan, Akin, & Robb firm on September 13, 2018…. Mr. Ricco also discussed the matter of the supersedeas bond, or the defendant's appellate bond, and who would be paying that bond.  ***We do not know whether this has been addressed further***." *See* SWISSRE001776 (emphasis added).

102.    Accordingly, the Lawyer Defendants knew by September 13, 2018 at the latest (a) that Pecos Valley/CHS likely did not have sufficient assets to procure a bond for twice the amount of the judgment ($143 million), (b) that coordination amongst Pecos Valley's/CHS's insurers would likely be necessary to procure a supersedeas bond given the required bond amount set by New Mexico statute, and (c) that without a true supersedeas bond, the Botello plaintiffs would be free to commence collection efforts on her client's policy.

103.    Yet, from September 13, 2018 through December 21, 2018, the Lawyer Defendants did nothing more on the issue other than report to SwissRe what Nora & Partners had learned three months prior.  Specifically, the Lawyer Defendants did not advise SwissRe about the need to obtain

a true supersedeas bond. They did not explain to SwissRe its options or the attendant consequences of not obtaining a true supersedeas bond. And they took no affirmative steps to see if Pecos Valley/CHS had put a bond in place, or if one could be put in place by the other insurers if Pecos Valley/CHS was unable to do so. Instead of timely addressing the supersedeas bond issue and ensuring that SwissRe was fully informed and protected from collection efforts, as the standard of care dictates, the Lawyer Defendants simply let the matter drop entirely.

104. On July 26, 2019, the issue of a supersedeas bond was broached again. As reported to SwissRe in Nora & Partners' report of the same date: "During today's call we learned that CHS and the plaintiff reached an agreement for a $50 million appeal bond and not the full $74 million so the hearing was unnecessary. There was an assumption during the call that there was no stay entered and that New Mexico statutes did not require that a stay be entered before garnishment proceedings could proceed." *See* SWISSRE003111.

105. But, even knowing that no stay was in place and that a full appeal bond had not been filed, the Lawyer Defendants still did not recommend that SwissRe file a bond or otherwise negotiate with the Botello plaintiffs to obtain a stay. Instead, the Lawyer Defendants continued to suggest that a stay would nonetheless be issued even without a full bond in place: "***Whether removed or not, it is hard to accept that the case will not be stayed due to the pending appeal***." *See id.* (Emphasis added.)

106. On September 9, 2019, counsel for the Botello plaintiffs sent a letter to Mr. White, which explained among other things that SwissRe "ha[d] not posted a supersedeas bond…in an amount satisfactory to meet the requirements of Rule 1-062." The same letter also attached a copy of the Botello plaintiffs' bond agreement with the Pecos Valley/CHS. Even though the Lawyer Defendants had full notice of the terms of the Botello plaintiffs' agreement with Pecos

Valley/CHS, and notwithstanding their full appreciation of the fact that no supersedeas had been put into place, not one of them appeared to have entertained the possibility of SwissRe entering into a similar agreement with the Botello plaintiffs, or advised SwissRe as to other potential suitable arrangements in order to stay collection efforts on the Malpractice Judgment.

107.    The Lawyer Defendants continued to believe, nonetheless, that a stay would be entered.  According to Ms. Nulman's January 20, 2020 e-mail to SwissRe: "Thus far, we have tried to avoid arguing the merits of plaintiff's motions in order to conserve resources and, based on our expectation that once this gets in front of a judge, ***the ongoing appeal will cause everything else to be stayed***."  *See* SWISSRE004447 (emphasis added).

108.    The same e-mail further reiterated "that there is no stay in place," and again raised the possibility that, because the appellate bond posted by Pecos Valley/CHS was not filed in accordance with New Mexico procedure, a stay may not even be justified here.  *Id.* Notwithstanding, Ms. Nulman informed SwissRe that Nora & Partners "did not believe challenging the legitimacy of the appellate bond was in the interests of any of the parties[,]" and indicated that the Lawyer Defendants were going "to review various options and to research applicable New Mexico law." *Id.*

109.    Ms. Hughes on behalf of SwissRe acknowledged receipt of Ms. Nulman's January 20, 2020 e-mail and informed Ms. Nulman that she would await the Lawyer Defendants' recommendations on next steps following Ms. Nulman's review in due course.  But again, the Lawyer Defendants dropped the matter.  They did not provide any real options.  Nor did they ever produce the extent of their research of "applicable New Mexico law."

110.    By plain application of New Mexico law, only a supersedeas bond will stay collection of a judgment during appeal.  *See* N.M. Stat. Ann. § 39-3-22(A) (there "shall be no

supersedeas or stay of execution upon any final judgment or decision of the district court in any civil action in which an appeal has been taken [] unless the appellant [] executes a bond to the adverse party in double the amount of the judgment complained of [.]").

111.    Thus, by failing to confirm that an adequate supersedeas bond was in place in the Medical Malpractice Action, or by failing to propose and execute on alternative solutions to stay collection on the Malpractice Judgment, the Lawyer Defendants opened the door to the Botello plaintiffs' efforts to collect against SwissRe's Policy.

112.    In an effort to excuse their failure in this respect, Nora & Partners reported to SwissRe on July 8, 2020 that "[i]t was initially *hoped* that a simple request for stay pending the appeal in the underlying case and/or reference to the Delaware coverage action would be enough to put an end to the garnishment action." *See* SWISSRE013110 (emphasis added). But the Lawyer Defendants' "hope" proved misplaced.

113.    The standard of care required the Lawyer Defendants to provide competent legal advice to SwissRe regarding the consequences of not obtaining a supersedeas bond.

114.    The standard of care required the Lawyer Defendants to diligently protect SwissRe's interests and its excess layer of coverage under the SwissRe Policy, including but not limited to obtaining and/or coordinating the entry of a supersedeas bond or other satisfactory arrangements to stay the Botello-plaintiffs' collection efforts while the appeal of the Medical Malpractice Action remained ongoing.

115.    The Lawyer Defendants breached the foregoing standards of care.

116.    But for these failures and deviations from the applicable standard of care, the Botello plaintiffs could not have successfully filed the Garnishment Action until the appeal of the Medical Malpractice Action had concluded, if at all depending on the outcome of that appeal.

25

117.    Because no true supersedeas bond was ever put in place or, alternatively, because no other suitable agreements were explored or executed upon to stay collection efforts while the appeal of the Medical Malpractice Action remained pending, the case followed an entirely different posture, ultimately culminating in SwissRe's approximate $23 million liability under the Garnishment Judgment and SwissRe's ensuing damages.

b.    The Delaware Coverage Action Failures

118.    On November 14, 2018, Steadfast filed the Delaware Coverage Action, asserting that there was no coverage under the Steadfast policy because, *inter alia*, CHS had violated both its duty to settle and the Steadfast policy's cooperation provision.

119.    Admiral, Endurance, and Illinois Union timely intervened in the Delaware Coverage Action, asserting among other things that coverage under their policies was too vitiated as a result of CHS's alleged violation of its duty to settle as well as its alleged failure to abide by certain notice provisions.

120.    Nora & Partners in its December 21, 2018 report alerted SwissRe to the Delaware Coverage Action. *See* SWISSRE001768, 1776-1780.

121.    But SwissRe, upon the Lawyer Defendants' advice, never moved to intervene in the Delaware coverage action, not even to assert that SwissRe could not be liable under its policy unless the insurers below it had exhausted their respective limits.

122.    Instead, the Lawyer Defendants advised SwissRe of their "preliminary" opinion that Pecos Valley/ CHS's conduct in the settlement negotiations was not "patently unreasonable or enough to rise to the level of bad faith." *Id.* The report specifically noted that Nora & Partners' research was incomplete and a "more thorough analysis" was needed to reach a conclusion on the likely outcome of the coverage action. *Id.*

26

123.   The Lawyer Defendants never provided SwissRe any additional analysis on the topic.  Nor did they analyze any further the legal and practical benefits of having SwissRe intervene in the Delaware Coverage Action. Once again, the matter was dropped.

124.   The standard of care required the Lawyer Defendants to provide competent legal advice to SwissRe concerning the practical and legal benefits of intervening in the Delaware Coverage Action.

125.   The standard of care required the Lawyer Defendants to provide sufficient facts and analysis to SwissRe so to allow SwissRe the opportunity to make a fully-informed decision as to whether to intervene in the Delaware Coverage Action.

126.   The Lawyer Defendants' failure to make a fully-informed recommendation to SwissRe to intervene in the Delaware Coverage Action was not without consequence.  Indeed, Steadfast, Admiral, Endurance, and Illinois Union—all of whom were parties to the Delaware Coverage Action—were able to argue successfully in the Garnishment Action that certain unresolved factual and legal issues at the forefront of the Delaware Coverage Action precluded summary judgment on their liability for the Malpractice Judgment.

127.   In response, the Botello plaintiffs were quick to point out to the court during the May 28, 2020 summary judgment hearing that, while Steadfast, Admiral, Endurance, and Illinois Union were parties to the Delaware Coverage Action, SwissRe was not. *See* May 28, 2020 Hearing Transcript at 75:19-20 ("Swiss Re, as it has admitted, is not in the Delaware Action.").

128.    For reasons unknown, even Mr. White himself highlighted this reality during the May 28, 2020 hearing: "Other factors that the Court may wish to consider, in terms of whether it's appropriate to enter judgment against Swiss Re, CHS and some of its insurers are litigating in

Delaware over whether the insurers have to pay any part of plaintiffs' judgment against Pecos Valley. ***Significantly, Your Honor, Swiss Re is not involved in that lawsuit***." *Id.* at 61:15-21.

129.     Of course, as the facts later came to bear, the court ultimately denied the Botello plaintiffs' motion for summary judgment against all of the insurers, except for SwissRe, *i.e.* the only insurer who was not a party to the Delaware Coverage Action.

130.     The Lawyer Defendants' failures in the foregoing respects fell below the applicable standard of care and were a cause in fact and proximate cause of the Garnishment Judgment entered against SwissRe and SwissRe's ensuing damages.

c.     Tennessee Choice of Law Failures

131.     Under SwissRe's Policy, Endorsement No. 3: "The parties' rights and obligations under this policy shall be governed, construed, and enforced in accordance with the laws of the State set out in your mailing address as shown in the Declarations issued at the Inception Date." Under the Declarations, the mailing address for CHS is listed as "4000 Meridian Blvd. Franklin, TN 37067." Accordingly, Tennessee law governed interpretation of SwissRe's Policy.

132.     In their January 15, 2020 motion for summary judgment filed in the Garnishment Action, the Botello plaintiffs argued summary judgment was proper on their breach of contract claim against SwissRe because the SwissRe Policy incorporated terms from the underlying AWAC policy that, in turn, required SwissRe to pay immediately the Botello plaintiffs a portion of the Malpractice Judgment on behalf of Pecos Valley/CHS. In support, the Botello plaintiffs cited *Rummel v. Lexington Ins. Co.*, 123 N.M. 752, for the proposition that the SwissRe Policy should be treated as a liability policy, despite the SwissRe Policy's clear indemnity-only language.

133.     SwissRe's response filed in the Garnishment Action on January 30, 2020, which the Lawyer Defendants reviewed and helped to draft, attempted to distinguish *Rummel*; however,

28

the Lawyer Defendants altogether failed to invoke the SwissRe Policy's choice of law provision in favor or Tennessee law, which would have rendered *Rummel* inapplicable.

134. This gross oversight is compounded by the fact that Nora & Partners had previously recognized the import of Tennessee law as regards to the SwissRe Policy's choice of law provision. *See, e.g.* SWISSRE001778 ("We have reviewed the applicable law in the three relevant jurisdictions, Delaware, Tennessee and New Mexico.").

135. The Lawyer Defendants asserted in the January 30, 2019 supplemental responses to plaintiffs' RFAs that New York law governed disputes over the policy language.

136. Ms. Nulman and Ms. Brown reviewed and edited drafts of both the response to plaintiffs' motion for summary judgment and the supplemental responses to plaintiffs' RFAs. They provided substantive input with respect to coverage issues and the interpretation of SwissRe Policy.

137. After Ms. Nulman edited Mr. White's draft supplemental discovery responses, he wrote: "Thank you for your help, and thank you for bailing out a blood-and-guts lawyer on insurance policy language."

138. The standard of care required the Lawyer Defendants to competently represent SwissRe's interests in the Garnishment Action and to invoke the choice of law provision in SwissRe's Policy calling for application of Tennessee law.

139. The Lawyer Defendants breached the standard of care by failing to invoke in the Garnishment Action the provision in SwissRe's Policy requiring application of Tennessee law.

140. But for this omission and deviation from the applicable standard of care, the court in the Garnishment Action was never alerted to the SwissRe Policy's choice of law provision mandating application of Tennessee law, which in turn was a cause in fact and proximate cause of

29

the trial court's summary judgment decision and the ensuing final Garnishment Judgment entered against SwissRe.

141.    But for this omission, the court in the Garnishment Action granted the Botello plaintiffs' motion for summary judgment (as against SwissRe only), explaining: "I think that *Rummel v. Lexington Insurance Company* is applicable, and I do think that the plaintiff has made a prima facie case.  I don't think, however, that the defendant has presented the Court with any facts which would preclude summary judgment as a matter of law."  May 28, 2020 Hearing Transcript at 84.

142.    *Rummel* should have never been the focus of the summary judgment proceedings in the Garnishment Action because SwissRe's policy was governed by Tennessee law.

143.    The foregoing omissions and deviations from the applicable standard of care were a cause in fact and proximate cause of the Garnishment Judgment and SwissRe's ensuing damages.

d.      Discovery Responses Failures

144.    On December 2, 2019, Park & Associates served legally improper responses to the Botello plaintiffs' written discovery requests.

145.    The Lawyer Defendants failed to coordinate responses to the discovery requests with Ms. Hughes at SwissRe and instead filed inappropriate responses and objections that ultimately led the judge to impose sanctions against SwissRe.

146.    While Mr. White prepared the responses, Nora & Partners reviewed and approved of those responses.

147.    The responses were improper for multiple reasons.  By way of one example, the Lawyer Defendants claimed that SwissRe did not have sufficient information to admit or deny that plaintiffs had attached a correct copy of SwissRe's policy.  By way of another, the Lawyer

30

Defendants refused to admit that the SwissRe Policy provided coverage for punitive damage awards. Both should have been unequivocal admissions.

148.    Although the Lawyer Defendants submitted supplemental RFA responses on January 30, 2019, the supplemental responses still refused to provide clear answers to the RFAs and reasserted the improper objections.

149.    As counsel for the Botello plaintiffs explained during the May 28, 2020 hearing:

> Critically, Your Honor, the Court can look at the RFA answers and see how obstructive Swiss Re has been very easy by looking at RFA number 1, which only asked them to admit that the policy we attached to the Complaint was a true and correct policy of their -- copy of their own policy of insurance.

> And the answer we got, Your Honor, was they could not verify -- with their own policy, their very own document -- they could not verify whether it was or was not the policy of the insurance applicable in this case. They went so far, Your Honor, after lengthy objections, to indicate that they made a reasonable inquiry and that the information is not obtainable by Swiss Re to enable Swiss Re to admit or deny[.]

> What we see throughout the request for admissions, Your Honor, is the same pattern of objections and lack of responses to even the most basic questions. For example, request for admission number 5, "Admit that the Swiss Re policy covers punitive damages." That's all it asked. One fact. And we got a page of objections followed by an answer that they can't answer based on reasonable inquiry whether their own policy covers punitive damages.

*See* May 28, 2020 Hearing Transcript at 13:4-14:2.

150.    The court in the Garnishment Action ultimately sanctioned SwissRe for the legally improper and deficient discovery responses filed by the Lawyer Defendants.

151.    And even more problematic, the court in the Garnishment Action granted the Botello plaintiffs' motion to deem their requests for admissions to SwissRe admitted.

152.    This included the Botello plaintiffs' Request for Admission No. 7, which asked SwissRe to admit that the SwissRe policy had "no exclusion or inconsistent policy term to

Condition R of the AWAC policy." Condition R of the AWAC policy provides in part that the insurer "is obligated to pay after final judgment is rendered after trial and to do so within 72 hours." The Botello plaintiffs argued in the Garnishment Action that SwissRe's Policy incorporated Condition R of the AWAC policy, but to prevail on that argument, they needed to demonstrate that the SwissRe Policy had no exclusion or policy term inconsistent with Condition R. The court's decision to deem this admission admitted provided the Botello plaintiffs the "evidence" they needed to prevail on their summary judgment motion in the Garnishment Action.

153. This error proved fatal, as SwissRe's Policy (at Section II, Limit of Liability) does contain terms inconsistent with Condition R of the AWAC policy.

154. By way of another example, the Botello plaintiffs Request for Admission No. 15 sought SwissRe's admission that, once the primary insurer pays, SwissRe is obligated to pay on behalf of its insured so long as the insured has defended and paid defense costs. The "obligated to pay" language was a focus of the court's analysis of the *Rummel* case during the summary judgment proceedings, which the court in the Garnishment Action relied upon in granting the Botello plaintiffs' motion for summary judgment as against SwissRe, only.

155. This too proved devastating for SwissRe because, while the AWAC policy is a "pay on behalf of" policy, the SwissRe Policy was an indemnity policy, meaning that SwissRe's indemnity obligations arose only after (a) Pecos Valley/CHS paid all amounts due from SwissRe and then sought indemnity, and (b) the limits below SwissRe's layer of coverage had been exhausted.

156. As a result, the court in the Garnishment Action granted the Botello plaintiffs' motion for summary judgment as against SwissRe, only, reasoning in part that there were no material issues of fact as to SwissRe's liability.

32

157.     The standard of care required the Lawyer Defendants to prepare complete, reasoned, and accurate responses to the Botello plaintiffs' written discovery requests.

158.     The Lawyer Defendants breached the standard of care.

159.     The Lawyer Defendants' failures were a cause in fact and proximate cause of the trial court's decision to enter summary judgment against SwissRe, only, the Garnishment Judgment, and SwissRe's ensuing damages.

e.     Non-Admitted Insurer Failures

160.     The Botello plaintiffs in the Garnishment Action repeatedly took the position that SwissRe was an unauthorized insurer under New Mexico law.

161.     By way of one example, on November 14, 2019, the Botello plaintiffs filed and served in the Garnishment Action a motion to default SwissRe and to enter judgment against it for its alleged failure to post a bond or to procure a Certificate of Authority before filing a responsive pleading.

162.     Ms. Brown, on behalf of Nora & Partners, subsequently advised SwissRe in November 2019 that filing a bond "seems like such a lot to do about nothing for something that has absolutely no basis" and opined that there should be a "simpler solution." *See* SWISSRE004247.

163.     Thereafter, the Lawyer Defendants failed to adequately research and argue the issue. As with everything else, the Lawyer Defendants did not take the issue seriously, apparently believing it would just go away.

164.     For instance, the Lawyer Defendants never articulated to the court in the Garnishment Action that SwissRe was not an unauthorized carrier because it did not "transact

insurance" within New Mexico for purposes of N.M.S.A. § 59A-5-1 *et seq.*, which is a prerequisite to the authorization requirement.

165.    Likewise, the Lawyer Defendants never alternatively argued to the court that, under application of N.M.S.A. § 59A-5-11(C), even if SwissRe was found to have "transacted insurance" in New Mexico, it was exempt from the "Certificate of Authority" requirement because its policy—which was negotiated and executed entirely out of the state—covered only subjects of insurance outside New Mexico when issued.

166.    Nor did they assert that SwissRe was exempt from the same requirement because its policy provided surplus line coverage.

167.    While the court in the Garnishment Action denied the Botello plaintiffs' motion on this issue at the May 28, 2020 hearing, the damage had already been done.  As the Lawyer Defendants themselves later admitted to SwissRe in reporting on the outcome of the May 28, 2020 hearing: (a) "the court was troubled by SwissRe's failure to become an authorized insurer and/or that it did not seek to post a bond once it was clear it was unauthorized[;]" (b) "SwissRe was singled out from the other carriers due to its nonadmitted status[;]" and (c) "the judge's displeasure towards SwissRe was due to SwissRe's filing of pleadings in the face of its nonadmitted status." *See* SWISSRE013104.

168.    These admissions further underscore that, as least as of July 8, 2020, the Lawyer Defendants had not recognized the legal arguments set forth above, each of which would have squarely debunked the Botello plaintiffs' repeated assertions that SwissRe was an "unauthorized" carrier for purposes of New Mexico law.

169.    The standard of care required the Lawyer Defendants to competently represent SwissRe's interests in the Garnishment Action, which in turn required them to thoroughly research

34

the issues and authorities concerning the Botello plaintiffs' non-authorized insurer argument and to present those authorities and arguments to the court.

170.     The Lawyer Defendants breached the standard of care by failing to research SwissRe's arguments in opposition to the Botello plaintiffs' non-authorized insurer argument and by failing to advocate the corresponding legal arguments that would have followed and inured to SwissRe's benefit.

171.     As a direct and proximate result of these omissions and deviations from the applicable standard of care, the court in the Garnishment Action singled out SwissRe and entered summary judgment against SwissRe, only.

172.     The foregoing omissions and deviations from the applicable standard of care were a cause in fact and proximate cause of the Garnishment Judgment and SwissRe's ensuing damages.

173.     At the very least, had the issue had been researched at the time and the right arguments raised, the trial judge in the Garnishment Action may very well have taken a different approach at the summary judgment hearing.

        f.     <u>Final Judgment Failure</u>

174.     In the middle of the May 28, 2020 hearing, after the judge in the Garnishment Action granted summary judgment against SwissRe, only, Ms. Brown immediately emailed Mr. White to instruct him to ask that the court's summary judgment ruling as against SwissRe only be certified as final so that it would be immediately appealable.  Mr. White did so, and the judge agreed that a final judgment was appropriate.

175.     Neither Ms. Brown nor Ms. White conferred with SwissRe on the issue prior to making the foregoing instruction and request.

176.     Neither Ms. Brown nor Ms. White gave due consideration to the consequences of an immediate final judgment.

177.     The standard of care required the Lawyer Defendants to communicate with SwissRe on material tactical considerations, such as requesting entry of a final judgment, and to act with competently with respect to making final material requests to the court.

178.     The Lawyer Defendants' request for a final judgment breached the standards of care.

179.     As a direct and proximate result, the court in the Garnishment Action denied SwissRe's motion for reconsideration of the summary judgment ruling, noting that SwissRe had previously asked for the summary judgment ruling to be certified as final.

180.     As a direct and proximate result, the Garnishment Judgment started accruing post-judgment interest as of June 16, 2020 at a rate of 15% per year ($7,463.01 per day), well before it otherwise would have started to accrue.

181.     At the very least, but for requesting that the summary judgment ruling be certified as final, SwissRe would have been in a much better position to negotiate a settlement with the Botello plaintiffs.

## COUNT ONE

## LEGAL MALPRACTICE

182.     SwissRe incorporates by reference and re-alleges the foregoing paragraphs of its Complaint as if set forth herein and below in their entirety.

183.     For all times relevant hereto, SwissRe employed the Lawyer Defendants to, *inter alia*, provide it competent legal advice and representation in connection with the Garnishment Action, creating an attorney-client relationship.

184.    Attendant to that relationship, the Lawyer Defendants owed SwissRe a duty to provide professional services with the skill, prudence, and diligence of attorneys of ordinary skill and capacity similarly situated.

185.    The Lawyer Defendants neglected multiple reasonable duties owed to SwissRe.

186.    The Lawyer Defendants failed to act competently.

187.    The Lawyer Defendants failed to advise SwissRe to the extent reasonably necessary so to afford SwissRe the ability to make informed decisions regarding the representation and matters at issue in the Garnishment Action.

188.    The Lawyer Defendants failed to make a reasonably diligent effort to comply with the Botello plaintiffs' legally proper discovery requests.

189.    But for the Lawyer Defendants' negligence, the Garnishment Action would have resulted in a more favorable outcome for SwissRe, and SwissRe would not have been singled out from other insurers and adjudicated liable for the Malpractice Judgment.

190.    The Lawyer Defendants' negligence and deviations from the standard of care resulted in and were the proximate cause of loss to SwissRe.

191.    SwissRe has been damaged in an amount to be proven at trial.

**JURY DEMAND**

192.    SwissRe hereby demands trial by jury on all issues triable as a right by jury.

**RELIEF REQUESTED**

WHEREFORE, SwissRe respectfully requests that judgment be entered against the Lawyer Defendants, jointly and severally, on its claim for Legal Malpractice, and in addition prays for the following relief:

A.    Compensatory damages in an amount to be proven at trial;

B.  Attorneys' fees incurred by SwissRe in the Garnishment Action in an attempt to correct the Lawyer Defendants' errors and omissions, as outlined herein;

C.  Court costs and costs of suit;

D.  Attorneys' fees, to the extent recoverable;

E.  Pre-and Post Judgment Interest on the foregoing sums at the highest lawful rate from entry of judgment until paid in full; and

F.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

By:  */s/ William B. Oberts*

Kevin O'Malley (to be admitted *pro hac vice*)
Hannah H. Porter (to be admitted *pro hac vice*)
GALLAGHER & KENNEDY, P.A. 2575 East
Camelback Road
Phoenix, Arizona 85016
Telephone:  (602) 530-8000 Facsimile:
(602) 530-8500
Email:  kevin.omalley@gknet.com
hannah.porter@gknet.com

Attorneys for Plaintiff

William B. Oberts (local counsel for Plaintiff)
Amy M. Kunzer (local counsel for Plaintiff)
OBERTS GALASSO LAW GROUP
181 W. Madison, Suite 4700
Chicago, Illinois 60601
Telephone: 312-741-1024
wboberts@obertsgalasso.com
amkunzer@obertsgalasso.com
docket@obertsgalasso.com

10359731